IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTINE SKAAR,

                    Plaintiff,                         OPINION AND ORDER

    v.

                                                    14-cv-579-wmc

CAROLYN COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Christine Skaar seeks judicial review of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, which denied her application for Social Security Disability Insurance Benefits and Supplemental Security Income.  On September 21, 2015, the court heard oral argument on plaintiff's contentions that the administrative law judge ("ALJ") failed to address adequately what weight to give a treating physician opinion and accommodate for Skaar's limitations in formulating her residual functional capacity ("RFC").  For the reasons provided below and discussed in more detail during the oral argument, the court will remand for further consideration and explanation of the weight given the treating physician opinion.

BACKGROUND

Skaar protectively filed an application for disability benefits on October 12, 2011. (AR 20.)  She claims an inability to work because of chronic diarrhea, which began in

2000 directly after she underwent radiation therapy.  (AR 42.)  Though Skaar testified that her diarrhea became uncontrollable in 2008 or 2009 (AR 53), she did not seek medical treatment until January 2012 (AR 56).  Skaar explained that this was because her oncologist advised that she would suffer from diarrhea for the rest of her life.  (AR 56.)  At the hearing, Skaar acknowledged that she first visited a physician because she needed to develop a record for her disability application.  (AR 57.)

Based on the medical record, the ALJ determined that Skaar's severe impairment was "gastrointestinal disorder secondary to radiation treatment."  (AR 22.)  The ALJ also found Skaar's impairment was a credible cause of her diarrhea symptoms, but nevertheless expressed doubt as to Skaar's credibility in describing the *severity* of her symptoms.  (AR 26.)  Among other reasons given, the ALJ explained that the long period of time between the onset of Skaar's diarrhea and the date she first sought treatment, as well as her related admission that she first saw a doctor in 2012 in order to develop a record for her disability application, gave rise to this doubt.  (AR 28-29.)

After giving little weight to the opinion of Skaar's treating physician, Dr. Kevin McClelland, the ALJ relied instead on the opinions of the state agency medical consultants.  The ALJ ultimately determined that Skaar had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567, except that she should avoid hazards and work in close proximity to a restroom.  (AR 25.)  Relying on this RFC, the vocational expert ("VE") testified that a hypothetical claimant could perform Skaar's past relevant work, as well as other jobs in the national economy.  (AR 69-70.)  The ALJ then refined the hypothetical question, asking the VE what percentage of the day employers tolerate

2

off-task behavior.  Together with the VE, the ALJ then determined that employers would permit a maximum of 42 minutes of off-task behavior, in addition to the regular breaks. (AR 70-71.)  After arriving at this 42-minute figure, the ALJ asked the VE to assume a hypothetical claimant who took up to 42 minutes of bathroom breaks outside of regular breaks.  Not surprisingly, since this was the VE's own maximum, she then found that such an individual *could* maintain employment.  (AR 71.)


OPINION

### I.      **Treating Physician Opinion**

On appeal, Skaar principally contends that her treating physician's opinion deserved controlling weight.   In *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011), the Seventh Circuit held that "[a] treating physician's opinion that is consistent with the record is generally entitled to controlling weight."  *Id*. at 811 (internal quotation marks omitted).   As a result, an ALJ must provide a "sound explanation" for rejecting as controlling a treating physician's opinion.  *Id*; *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ must offer good reasons for discounting a treating physician's opinion.") (internal quotation marks omitted).   In rejecting a treating physician's opinion as controlling, the ALJ must similarly consider what weight to give such an opinion, including examining "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."  *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *see* 20 C.F.R. § 404.1527(c).

Here, the ALJ summarily addressed the weight she assigned to the opinion of Dr. McClelland as the treating physician in a single paragraph of her decision, explaining that the opinion deserved little weight because it "appear[ed] to be based only on the claimant's statements and [was] without support from objective findings in the record." (AR 30-31.)  Furthermore, the ALJ found the objective medical evidence here was in the form of "normal laboratory work, repeatedly normal abdominal examinations, evidence of gradual weight gain . . . and findings of no acute distress," none of which she concluded necessarily supported Dr. McClelland's opinion.  (AR 31.)

Certainly, an ALJ is entitled to discount a treating physician's opinion when it is based on a claimant's subjective complaints.  *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013).  Even so, an ALJ must do more than identify medical evidence in the record that fails to support the treating physician's opinion.  Instead, the ALJ must evaluate whether the treating physician's opinion is "well-supported" and "not inconsistent with the other substantial evidence in the record."  *Scott*, 647 F.3d at 739 (internal quotation marks omitted).

While the ALJ here did a commendable job in setting forth her ultimate findings, her written decision does not permit the court to conclude that she adequately addressed the medical record in evaluating Dr. McClelland's opinion.  *Cf. Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (stating that the analysis presented in the ALJ's written decision must allow the court to engage in "meaningful appellate review").  *First*, the ALJ's written decision does not reflect that she considered the entire record in evaluating Dr. McClelland's opinion.  For example, treatment notes prepared by Kathleen Gang,

M.D., appear to be *consistent* with Dr. McClelland's conclusions about Skaar's limitations, but the ALJ does not address them in her decision.[1]  The absence of any discussion in the ALJ's written decision is particularly troubling because, unlike the state agency medical consultants, whose opinions were based on a cold record and yet afforded considerable weight by the ALJ, Dr. Gang personally examined Skaar and did so on multiple occasions.  At a result, the paragraph in the ALJ's opinion addressing Dr. McClelland's opinion at best supports plaintiff's contention that the ALJ only considered medical evidence supporting a finding that Skaar is not disabled in evaluating the treating physician opinion.  On remand, the ALJ must avoid presenting only medical evidence controverting the treating physician's opinion.  *See Scott*, 647 F.3d at 740 ("The ALJ was not permitted to cherry-pick from [] mixed results to support a denial of benefits.") (internal quotation marks omitted).

*Second*, and relatedly, the ALJ did not explain how she resolved contrasting medical evidence in determining Skaar's RFC.  For instance, the ALJ did not discuss why the opinion of state agency medical consultant, Mina Khorshidi, M.D., deserved more weight than Dr. McClelland's opinion, especially given Dr. Khorshidi's finding that Skaar's "statements regarding [her] symptoms and their effects on [her] functioning [were] supported by the evidence and [were] fully credible."  (AR 88.)  Additionally, the ALJ did not address the apparent inconsistency between treatment notes in the record -- including some mentioning polyps removed during a colonoscopy and "increased bowel

---

[1] The court does not find remand is required because the ALJ did not consider Dr. Gang's formal opinion, which was apparently prepared *after* the ALJ issued her written decision, but having been added to the record and thus designated as new, material and time-relevant by the Appeals Council (Def.'s Opp'n Br. (dkt. # 12) 18), the ALJ ought to consider this opinion on remand.

sounds" -- and the ALJ's characterization of Skaar's lab results and abdominal examinations as "repeatedly normal." (AR 27-28, 31.) In order to provide a sound explanation for rejecting Dr. McClelland's opinion as to Skaar's RFC, the ALJ must both recognize and analyze this contrasting evidence. *See Herron*, 19 F.3d at 333.

*Third*, and also related to the two grounds for remand explained above, the ALJ's written decision suggests that she may have improperly relied on her own interpretation of medical evidence in giving little weight to Dr. McClelland's opinion. In particular, the ALJ concluded that both "evidence of gradual weight gain" and "no indication of considerable weight loss one would expect to see with numerous episodes of diarrhea each day" undermined Dr. McClelland's medical conclusions. (AR 31.) Nowhere in the ALJ's decision, however, does she cite to an opinion from a medical professional stating that "considerable weight loss" is expected for individuals who have Skaar's condition.[2] As intuitive as the ALJ's conclusion regarding Skaar's weight may seem, the Seventh Circuit does not permit ALJs to "play doctor and make their own independent medical findings." *Rohan v. Carter*, 98 F.3d 966, 970 (7th Cir. 1996).[3]

---

[2] At oral argument, the government ackowledged that no medical professional opined about the importance of Skaar's weight gain or loss. The government did suggest that the ALJ's conclusion regarding Skaar's weight was supported by Dr. Gang's note that Skaar "had no change in her weight" (AR 340), but it is going too far to interpret this note as expressing any medical opinion about the significance of this fact to accurately diagnosing the severity of her condition.

[3] To the extent there remained any material questions regarding Skaar's impairment, such as the significance of her weight gain or whether Dr. McClelland could rule out certain causes of Skaar's symptoms, "the ALJ ha[d] a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Particularly given that it is not in dispute that Skaar's severe impairment was caused by radiation treatment (rather than a more common or easily identifiable cause), the ALJ ought to consider on remand whether it is necessary to "solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).

Even if the ALJ's written decision presented good reasons for discounting the controlling weight otherwise due Dr. McClelland's opinion, the ALJ's decision contains no analysis of the other factors an ALJ is required to consider in deciding *what* weight to give the treating physician's opinion.  To the contrary, while the ALJ listed each of the factors in her written decision (AR 30), she only appears to have considered select portions of the medical evidence, as well as Skaar's credibility, in concluding that Dr. McClelland's opinion was due little weight.

Although the written decision does include dates that McClelland examined Skaar and notes medical tests he ordered for her, the ALJ did not evaluate whether this treatment and examining relationship lent weight to McClelland's opinion.  Despite Skaar's testimony at her hearing that McClelland was a gastroenterologist (AR 61) and the letterhead on which his treatment notes reflect a likely speciality in "Gastroenterology Services - Digestive Disease Clinic" (AR 128), the ALJ also made no mention of whether Dr. McClelland's opinion is due additional weight as that of a specialist in the relevant field of medicine.

An ALJ need not explicitly weigh every factor in deciding what weight to give a treating physician's opinion.  *See Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008) (affirming denial of benefits after the ALJ discounted the treating physician's opinion because he was not a specialist and did not conduct a thorough medical examination).  Here, the written decision does not reflect that the ALJ considered medical evidence supporting Dr. McClelland's opinion or considered factors that appear to lend weight to that opinion.  The ALJ should endeavor to do both on remand.

## II.    RFC Determination

Having presented several reasons why remand for further proceedings is required in this case, the court need not address in any detail whether remand is also warranted on the basis that the ALJ's formulation of the RFC was inadequate.  After evaluating what weight to afford the opinions of the medical professionals on remand, however, the ALJ should obviously go on to consider how those opinions and Skaar's allegations about her symptoms translate to her ability to maintain full-time employment.

Most significantly in this case, Skaar claims disability based on her frequent and unexpected need to use the restroom throughout the day.  The ALJ claimed to have accommodated for Skaar's chronic diarrhea by including limitations in the RFC that require her to avoid hazards and work near a restroom.  The discussion that unfolded between the ALJ and VE at the hearing, however, suggests that the 42-minute limit for which the VE determined a hypothetical claimant could use the bathroom outside of the regular breaks was reached somewhat arbitrarily at best and cynically at worst in order to justify a predetermined conclusion that Skaar was not disabled.  To avoid the appearance of working backward to ensure that result, the ALJ should first determine whether further development of the record is appropriate and then consider the entire record in defining the extent of Skaar's particular limitations before posing hypothetical questions to the VE.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability

benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g)

for further proceedings consistent with this opinion.  The clerk of court is directed to

enter judgment for plaintiff and close this case.

Entered this 6th day of November, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
U.S. District Court Judge